J. P. NAVAILLES (RED LINE COMMERCIAL Co.) *v.* UNITED STATES

No. 4397.—Invoice dated Tokyo, Japan, February 23, 1935.
Certified February 23, 1935.

Entered at New Orleans, La., April 4, 1935.
Entry No. 2291.

(Decided September 28, 1938)

*Barnes, Richardson & Colburn (Hadley S. King* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph E. Weil* and *Samuel D. Spector,* special attorneys), for the defendant.

EVANS, Judge: This is an appeal by the importer from a finding of value by the United States appraiser upon a quantity of electric-light bulbs imported from Japan. They were invoiced at 7.70 yen per hundred, which amount included lighterage, packing charges, and freight. The value given on the entry is 7 yen per hundred, packed. They were appraised at 8.60 yen per hundred less 10 per centum, less inland freight, packed.

The first witness called by the importer stated that he placed the order for this merchandise by cable and that 50,000 pieces, in his judgment, constituted the usual wholesale quantity as ordered from this country. In response to an inquiry by the judge presiding at the

trial as to what was the usual wholesale quantity in Japan the witness answered:

I am not familiar with Japan, but what we bought here. It would not be of any use to bring in less than fifty thousand, because the cost of handling would be more.

He stated that he was getting quotations all the time from Japan in 1934 and 1935, but he produced no quotations and stated two different figures at which he claimed such merchandise had been offered to him, neither of which corresponded with the entered value. He stated further that he had no knowledge as to whether there was a foreign-market value, that is a home-market value, for the instant merchandise. Among other things he gave the following testimony on direct examination:

Q. Did you pay 7.70 yen per hundred for this merchandise?
Judge SULLIVAN. F. O. B. New Orleans.
The WITNESS. I cannot answer that.
Judge SULLIVAN. Why not?
The WITNESS. Because it was bought C. I. F. New Orleans.
Judge SULLIVAN. All right, C. I. F. New Orleans. Is that what you paid for it?
The WITNESS. In dollars and cent. The exchange details I don't know about.

The invoice states that the merchandise was purchased f. o. b. Yokohama. Counsel for the importer claims that this statement on the invoice is in error, but he produced no copy of an order or anything further on that point than the testimony as above outlined. The witness also stated that the c. i. f. price included everything they paid for the merchandise. Therefore, among other things paid was an item of ocean freight which the importer's attorney states was $4.25 per thousand, whereas the witness on p. 14 of the stenographic minutes states the freight was $4.40.

The next witness was a Japanese who had been employed by a firm located in Yokohama that was engaged in buying and selling electric-light bulbs at wholesale. He stated that purchases were made in quantities of usually 50,000 to 100,000, sometimes more; that in January and February of 1935 he was paying in Japan an average of 7 yen for lamps of the type here in question, which price included packing. He also stated that the market was in Tokyo; that they were purchased from Tokyo and it included the freight from Tokyo to Yokohama. The price in yen herein included the freight from Tokyo to Yokohama but did not include the freight from Yokohama to the United States. He stated that the lamp sold for domestic purposes in Japan was of a standard voltage of 100 while the standard for export was 120. He was asked:

Q. Were they sold at about the same price, lamps for export to the United States?—A. Yes. Sometimes export quantity bigger than domestic demand was in quantity, so export prices are a little cheaper.

This witness stated that he knew a director of the Nippon Federation of Electric Bulb Manufacturers and that such director fixes a minimum price for these bulbs which he thought was about 8.60 yen per hundred, but he was not sure. That 8.60 yen was the price for the minimum quantity but in the case of a larger quantity they consider the price, give a lower price, but that his concern never considered the Federation. They bought at the factory and bought at a lower price. He did state on redirect as follows:

R. Q. Do I understand that your testimony Mr. Sekii, that this Association attempted to fix prices, is that correct?—A. That is right.

R. Q. Did anybody follow that?—A. No.

R. Q. So any man who knew his business, the lamp business, could buy electric lamps in Japan for either consumption in Japan, or for export, in January and February at 7 yen per hundred, is that right?—A. That is right.

R. Q. Was that a market or shipping place?—A. Just export port, the market was in Tokyo.

R. Q. That was the port of export, the market was in Tokyo?—A. That is right.

On recross-examination this witness was asked:

R. X Q. Do you know whether or not the Association made prices for local consumption, that is for the Japanese market?—A. I don't know.

R. X Q. Did the association make a minimum price for lamps that are sold in Japan?—A. Domestic, I think they did, but——

R. X Q. Anybody could buy that size?—A. I am not familiar, I think that may be, but I do not know, because exporter no need to know domestic business, entirely separate in Japan.

R. X Q. You don't know whether or not there was a higher price in Japan for this merchandise?—A. No.

The third witness, in response to Judge Sullivan's inquiry, stated that he did not know anything about the prices in Japan.

He knew only the prices on the c. i. f. basis. He thereafter gave the c. i. f. prices in New York, which, of course, might be different from prices in New Orleans, the port of entry. He stated that he did not know the conversion rate at the times of these importations.

Certain special agents' reports were introduced by the importer for the purpose of showing the character and quality of electric lamps in Japan, and the Government at a subsequent hearing introduced a pricelist and special agent's report dated January 26, 1935.

The record in this case is of such an unsatisfactory character that the court cannot say that the evidence overcomes the presumption of correctness which attaches to the appraiser's action herein. I therefore sustain the appraised value.